# U. S. CIRCUIT COURT.

## PETER POILLON agt. JOSEPH SCHMIDT.

The discovery of the principle that *steam* may be made to *pack* in and of itself or to become *self-packing*, is an invention that is the subject of a patent.

It had always been supposed, that ever since steam has been introduced as a motive power, that two contiguous surfaces could be rendered steam-tight, only by actual contact; that consequently, all steam engines had depended for steam-tight moving joints on the contact of smooth surfaces or on elastic packing set steam-tight against its adjacent surface; that in carrying out this idea, great varieties of packing had been devised at great expense.

The fact is now discovered, that steam when introduced into small groves in one or two contiguous surfaces, will itself form a packing without the surfaces being actually in contact.

*Southern District of New York, February,* 1869.

THIS was an action of *trespass on the case* at common law for the infringement of the patent of Peter Poillon, dated July 21, 1857, for an improved "*means of rendering joints steam-tight*" by the use of two steam pumps, having the plaintiff's invention in the steam slide valve.

MATHEWS and BETTS, *for plaintiff.*

I. Even if Mr. Poillon's patent claimed the machinery strictly in all connections, it is not anticipated by Mr. Cave's publication, for that is not as delineated and described a practical working engine. The space between the piston and cylinder is too large.

1. Mr. Poillon uses this piston in combination with steam machinery as described; it is a new and different organization. (*Clark's Patent Steam and Fire Reg. Co.,* agt. *Copeland,* 2 *Fishers, Patent Cases,* 227.)

II. But Mr. Poillon's patent is not a claim for the form of machinery, he expressly disclaims grooving the surface, it is only when a piston, or other part of steam machinery, con-

structed as described in his patent, is used in connection with steam, for the purpose of producing a frictionless or nearly frictionless packing that he makes any claim. It is when this form of machinery is used to develop the property of steam which Mr. Gale discovered that the patent operates.

III. Even if air in such machinery operates by the same law as steam, the discovery of Mr. Gale, and its embodiment in steam machinery is a good subject of a patent.

1. Steam is an obvious substitute for air; no person could tell without experiment trial and *dicovery*, that steam would perform the functions of air in this instance.

2. Its expansive force is so great as would without experiment, almost irresistably lead to the conclusion, that it would force itself between the piston and cylinder, notwithstanding the dimimution of its power by the grooves.

3. If to be assured of its practical operation, experiments would have to be made, it is the proper subject of a patent, although analogy based upon the laws which governs all elastic fluids, would seem to point to the discovery. (*Telegraph Co.*, agt. *Brett*, 70 *E. C. L. R.*, 882.)

4. Air is only practical in such a machine at a pressure of a few pounds to the square inch. It required invention and discovery to ascertain that steam would act practically at the vastly higher pressures requisite in steam engines.

5. Steam is infinitely more efficient than air, in this connection. It is a good invention to substitute a more efficient agent. (*Hali* agt. *Jarvis*, 1 *Webbs, Pat. Cases*, 100.)

6. Mr. Gale discovered this property in steam, and applied it in practice with beneficial effect. His discovery as applied is patentable, even though it should be admitted that the machinery is wholly old, and that the same property had been discovered in other fluids than steam. (*Derosue* agt. *Fain, as cited in Crane* agt. *Price*, 43 *E. C. L. R.*, 313; 4 *Man. and Granger*, 604; *Foote* agt. *Silsby*, 2 *Blatchf.*, 265; *Clark's Patent Steam and Fire Reg. Co.* agt. *Copeland*, 2

*Fisher's Patent Cases*, 227; *LeRoy* agt. *Tatham*, 14 *How.*,
256 (*opinion of* NELSON, J.); *LeRoy* agt. *Tatham* 22 *How.*,
132).

7. Mr. Poillon's patent is in effect for the production of a
steam-tight joint, by a combination of steam with the ma-
chinery described, it will not be defeated by the prior publi-
cation of the combination of a different fluid and of inferior
capacities with machinery of the same form, but of inde-
pendent purpose.

The combinations are essentially dissimilar.

IV. But it is by no means clear, that steam, though it is
doubtless possessed of the properties described in air, does
operate in practice and pack itself upon the principle des-
cribed by the witness Mr. Cave.    Upon this we have two
theories.

1. That of the witness Mr. Emory, who states it substan-
tially similar to Mr. Cave, but who has never seen a steam
piston act under circumstances, where he could watch its
practical operation.

2. That of the witness Mr. Ames, who made the defendant's
pumps, and of the witnesses Mr. Darlington, Mr. Sprague
and Mr. Poillon, who had many times witnessed the practi-
cal operation of the piston, letting it rise out of the clylin-
der while under a pressure of steam, and when the appar-
atus was sufficiently hot to boil water standing on the top
of the piston.

They all concur in the opinion that steam operates in
practice in the great generality of cases, by condensing into
water in the grooves, thereby forming a water packing, and
lubricating itself, the water adheres in the grooves by at-
traction and friction, is more readily condensed by the in-
creased force.

The result of this operation is the reverse of that des-
cribed by Mr. Cave.

3. This was evidently the result of the practical experi-
ence of the inventor, Mr. Gale.   He says "the grooves may

be one or many, at more or less distances apart, more or less wide or deep, and they may be perpendicular or more or less inclined to the moving surface and of any sectional form" (see patent).

V. There should be the clearest *evidence* not mere theories, to establish prior use in any form.

VI. The court will not be abstruse to invalidate a patent upon evidence of the prior publication in an obscure work, printed in another language, where it appears, that Mr. Gale was the discoverer of, and reduced to practice, an important principle in steam machinery.

When the prior publication described a different use, of differently constructed machinery, (and which as described is claimed not to be practical), for a radically different purpose, and by a clear perponderance of evidence proved to be effective if at all only by the operation of different laws than obtain in steam machinery.

VII. The patent should be sustained and and judgement rendered for the plaintiff.

L. D. COZZENS, *for defendant.*

Contended that the patent was a claim to the machinery, in itself, and that such machinery was fully described in a german work, entitled "*Schauplatz der Kunste und der Handuerke*" printed at Weimar, in 1847.

That the invention of plaintiff was a mere "*double use*" of an old machine.

That the patent if not for the machinery was a claim for a mere *principle,* or property of steam, and not patentable.

He cited, (*Morton* agt. *New York Eye and Ear Infirmary, M. S.*) That the patent does not distinctly point out what is new and what is old in the "*specification.*"

That the invention is insufficiently described.

The nature of the patent and claims of the defense are fully stated in the opinion of the court.

BLATCHFORD, J. This is an action at law, for the infringe-
ment of letters patent, granted to the plaintiff on the 21st
of July, 1857, for a new and useful "means" for rendering
joints steam-tight.

The invention was made by William S. Gale, and assigned
to the plaintiff.

The specification speaks of the invention as "a substitute
for all known means of packing pistons or other steam
joints." It consists of a grooved or a corrugated surface
with an opposing smooth or plain surface. The grooves
may be made in the surface of the piston or in the interior
surface of the clyinder as preferred. The specification des-
cribes as follows, the working of the structure :

The steam as it is let into the cylinder, rushes in between
the piston and cylinder, and fills up the grooves and the in-
tervening space, between the piston and cylinder, where it
practically forms a complete packing.

The steam which fills the grooves and intervenes between
the piston and cylinder, also acts as a cushion to practically
relieve the piston and cylinder from contact and friction.
The grooves may be one or many, at more or less distance
apart, more or less wide or deep, and they may be perpendic-
ular or more or less oblique to the moving surface and of any
sectional form. The best method is to groove one moving sur-
face and leave the opposing surface smooth, to make the grooves
thin and frequent, and the corresponding ribs or flanges of the
same or about the same thickness as the width of the
grooves. The grooves need not be deep, from one-quarter
to one-half inch will answer. The *piston can be of any
ordinary size* and dimension now in use or a trifle larger.
It should fit easy, and does not require to be in actual con-
tact with the cylinder. To cut the grooves perpendicular
to the axis of the joint or to the moving surface, and in the
sectional form of a parallelogram is the better way, and
sufficient for all purposes, and is the most simple and cheap
in construction. See representation in the acompanying

drawing. It will be apparent that my grooves and intervening ribs may be used on any joint between two surfaces subject to the operation of steam under pressure, to cause steam to become self packing. The particular point of my invention and discovery, and its importance will be perceived from the following: Since the introduction of steam as a motive power, it has always been supposed that two contiguous surfaces could only be rendered steam-tight by actual contact. Hence, every steam engine that has heretofore been made has depended upon smooth surfaces in contact, or else upon some character of elastic packing, that would set steam-tight against its adjacent surface. To accomplish this, great varieties of metallic and other packings have been devised and vast expenses incurred to make the pistons and other moving joints steam-tight, and this course has heretofore been universally pursued. I believe myself therefore, to be the original and first inventor or discoverer of the fact that steam when introduced into small grooves is one of the contiguous surfaces will itself form a packing, within said surfaces actually being in contact. I, however, wish it to be understood, that I do not claim the grooved surfaces in themselves, as these have heretofore been used for other purposes and have been used in connection with air engines. The claim is to "the method herein described of causing steam to become a packing to itself in steam cylinders or other parts of steam machinery by allowing the steam to act in one or more grooves substantially as specified." The case has been tried before the court without a jury.

If the patent be valid the infringement is not denied. The defense is put upon the ground of a want of novelty in the invention; what is adduced to defeat the patent is a publication in a work in german, called the "Schauplatz" published at Weimar, in Germany, in 1847. The text of the publication is accompanied by a drawing and is this, as translated." Mr. Cave uses for his blowing machines a very ingeniously

arranged piston, whereby the leather packing becomes unnecessary, which is perfectly air-tight, has no friction, does not become heated, and requires no cost for keeping it in order.

This piston consists of a hollow cast iron ring, which has a diameter about two or three millimetus less than the cylinder, and whose outer surface has the greatest practicable number of annular and squares, depressions a, b, c, d. If now, for example, a piston arranged in this way goes upward and compresses the air which is found above it, and then this air, in part, presses in between the walls of the cylinder and the outer wall of the piston, having reached a, it freely expands, so that it compresses the air therein contained, and then loses for once a part of the force by which it had been pressed in, by which its motion is hindered, and there is opposed to it on the other side to which it tends to go, a certain resistance. It follows from this, that the air passed into a, works backward one after another, into the grooves b, c, d, with a force which constantly decreases, and which for a sufficient number of grooves can become zero. Therefore, theoretically considered, the number of grooves must stand in direct proportion to the pressure. Mr. Cave, has employed these pistons for very many blowing cylinders, and even too for one, of three metres in diameter. He has made careful experiments with this contrivance, and the results obtained agree in all respects with the theory; an essential condition for the employment of this piston is a perfect cirtricity of the cylinder a condition which we can now easily obtain by means of the vertical boring machine.

The first question to be decided is, what is the proper construction of the plaintiff's patent, if it claims merely arrangement of the grooves in one of the two surfaces? If one be a moving surface, then undoubtedly the arrangement of Mr. Cave, is an answer to the patent, but the specification says that the inventor does not claim "the grooved surfaces in themselves." Nor does he claim the use of the grooved

surfaces in connection with air, for the specification states that they have been used in connection with air engines. The *inventor,* from the language of the specification, may fairly be said to have had in view the explanations of Cave, which used grooved surfaces in an air engine. He puts his invention however, upon an entirely different point, and claims that notwithstanding Cave, he has made a patentable invention; he says that he has discovered the fact that steam may be made to pack in and of itself, or to become what he calls "self-packing;" that prior to his invention it had always been supposed that ever since steam has been introduced as a motive power, that two contiguous surfaces could be rendered steam-tight only by actual contact; that consequently all steam engines had depended for steam-tight moving joints on the contact of smooth surfaces or on elastic packing set steam-tight against its adjacent surface; that in carrying out this idea great varities of packing had been devised at great expense, and that he first discovered the fact, that steam when introduced into small grooves in one or two contiguous surfaces, will itself form a packing without the surfaces being in actual contact. It was not attempted to be shown on the part of defense that these allegations of the specification are not true, otherwise than by introducing the description and drawing of the Cave apparatus.

But it was insisted that air, the elastic fluid used in the Cave apparatus, operated therein in the same manner in connection with the grooves as steam, the elastic fluid used in the plaintiff's apparatus, operates therein in connection with the grooves, and that the grooves, and the grooved surfaces being alike in the two, and the air and the steam as used being equivalents for each other, there was no patentable novelty in using the grooves in connection with steam, but that it was merely the application of an old apparatus to a new use.

Opposed to these suggestions is the fact, that until this patent was issued the idea was not promulgated that steam

could be made self-packing, and the publication in " Schau-platz " that air could be made self-packing in an air engine, remained before the world ten years prior to the patenting of Gale's invention, without that being suggested, which is now asserted to be so obvious in view of the apparatus of Cave. The invention as set forth in the specification is a highly meritorious and useful one, and one which " courts will desire to sustain if consistent with the principles of law.

The claim is to the method herein described of causing steam to become a packing to itself, in steam cylinders or other parts of steam machinery by allowing the steam to act in one or more grooves substantially as specified. It is not possible to mistake the tenor and purport of this claim, when it is not read in connection with the rest of the speci-fication.

It is a claim to an art or process ; it is not a claim to the grooved surfaces, but it is a claim to the process of the self-packing of steam used in steam machinery when effected by allowing the steam to act in one or more grooves as des-scribed in the specification.

Gale undoubtedly was the first to discover that steam could be made to pack itself and that it could be made to do so by causing it to act in the way described in one or more grooves. The grooves used in an air engine, were indeed old, but it by no means followed, because air would work successfully, in the apparatus of Cave, that steam could be made to pack itself, or to do so by means of grooves, or to do so in the apparatus of Cave. There was room for experiment as to the capability of steam to act in that way, and as to the character of the grooves to be used, and as to what space might or might not be left between the contiguous surfaces. And it does not detract from the novelty or patentability of the invention, that in carrying it out in practice, the use of grooves, like those in Cave's apparatus, was found bene-ficial.

The claim is not to all methods of causing steam to become a packing to itself, in steam machinery; but to the method described in the specification, whereby the property of steam discovered by Gale is made to subserve a useful purpose by being carried into effect in a practical mode. The newly discovered property of steam, and the practical adaption of it to a useful end, by the means described is the invention made in claim.

It is difficult to distinguish this case from that of the Hanson patent for making lead pipe, which was sustained as a valid patent by the supreme court in "*Leroy* agt. *Tatham*" (22 *How.*, 132).

The Hanson's discovered that lead when recently set and solid, but still under heat and extreme pressure, in a close vessel, would re-unite perfectly after a separation of its parts. Availing themselves of this property of lead, the inventors succeeded in making by machinery, at a reduced expense, lead-pipe of a better quality than had before been known. The claim of the patent was to the combination of machinery employed, when used to form pipes of metal under heating pressure, in the manner set forth, or in any other manner substantially the same. The machinery used is shown to be in principle substantially the same with machinery which had before been used to make maccaroni, and with machinery which had before been used to make clay pipe. The claim was stated by the court to be a claim to the machinery only when used to form pipes of metal under heating pressure, and was sustained by the court against the objection that it only claimed the application of an old machine to a new use, or to produce a new result. The claim in the Hanson patent would have been the same to all intents, if it had claimed the method of causing lead to separate and re-unite at a welding heat, under pressure in a close vessel, by the use of the machinery described, to form lead pipe in the manner set forth.

The claim of the Gale patent would be the same in effect, if it were to claim the arrangement of the grooves substantially as specified, when used in connection with steam, to cause the steam by acting in the grooves in the manner described, to become a packing to itself in steam machinery.

I am satisfied that the Gale patent is valid; that the claim is sustainable; that the invention claimed is new and useful; and that the plaintiff is entitled to a verdict of $50 on the two machines proved to have been used by the defendant. The license fee fixed by the plaintiff being shown to be $25 on each machine.